UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHESTER BODMAN,

       Plaintiff,

v.

       Case No. 2:14-cv-14420
       District Judge David M. Lawson
       Magistrate Judge Anthony P. Patti

ARAMARK CORPORATION, *et al.*,

       Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 11)

**I.     RECOMMENDATION**: The Court should grant Defendant O'Bell Thomas Winn's unopposed motion for summary judgment for Plaintiff's failure to exhaust his administrative remedies prior to initiating this lawsuit. (DE 11.)

**II.    REPORT**

    **A.  Background**

    Plaintiff, Chester Bodman, an inmate at the Kinross Correctional Facility who is proceeding without the assistance of counsel, filed his complaint and application to proceed without prepayment of fees on November 18, 2014. (DE 1 and 2.) The Court granted Plaintiff's application on November 25, 2014. (DE 3.)

In his complaint, Plaintiff brings claims under 42 U.S.C. § 1983, asserting: 1) violations of the Due Process and Equal Protection clauses of the Fourteenth Amendment; and 2) cruel and unusual punishment in violation of the Eighth Amendment related to his employment as a food service worker at the Saginaw Correctional Facility ("SRF"). Specifically, he asserts that when the Aramark Corporation took over prison food service from the State of Michigan, the inmate food service workers were improperly terminated and transferred out of SRF. Plaintiff indicates that these improper transfers removed the inmates' ability to file grievances against the individuals at SRF. (DE 1, ¶ 22.) He asks the Court to award injunctive relief, including reinstatement to his position, declaratory relief, and an unspecified amount of compensatory and punitive damages.

Defendant O'Bell Thomas Winn, the Warden of SRF, filed the instant motion on December 26, 2014, asserting that he is entitled to a grant of summary judgment on three bases. (DE 11.) First, he contends that Plaintiff failed to exhaust his administrative remedies before filing his complaint. Second, he asserts that Plaintiff's transfer from SRF to the Kinross Correctional Facility ("KCF") moots his claims for injunctive and declaratory relief. Finally, he argues that he is entitled to Eleventh Amendment immunity for Plaintiff's claims for money damages against him in his official capacity.

On January 22, 2015, the Court issued a scheduling order, requiring Plaintiff to respond to Defendant Winn's motion on or before March 9, 2015. (DE 20.) To date, Plaintiff has not filed a response.

### B. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

"[E]ven where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). However,

> In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the

4

> evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted."

*Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992); *see also F.T.C.*, 767 F.3d at 630 n.11.

### C. Discussion

The Undersigned will address each of Defendant Winn's arguments in turn.

#### 1. Exhaustion of Administrative Remedies

##### a. Exhaustion Under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the

5

agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust

6

administrative remedies is an affirmative defense under the PLRA.[1] As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

### b.     Grievance Procedures at the MDOC

Pursuant to its Policy Directive dated July, 9, 2007, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve any issue with the staff member involved within two days of becoming aware of a grievable issue. (DE 11-2, ¶ P.) If the issues are not resolved within five days, the inmate may file a Step 1 grievance using the appropriate form. The inmate should receive a response within fifteen days of filing his or her grievance. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. (Id. at ¶ BB.) Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. (Id. at ¶ FF.) Step III grievances are "logged on a computerized grievance tracking system." (Id. at ¶ GG.) The matter is fully exhausted after the disposition of the Step III

---

[1] Although Defendant Winn could have filed an answer asserting exhaustion as an affirmative defense, he instead appropriately raised the issue for the first time in the instant motion. *See* Fed. R. Civ. P. 56 ("a party may file a motion for summary judgment at any time until 30 days after the close of discovery.").

grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### c. **Plaintiff Did Not Comply with the MDOC Policy by Failing to Pursue a Step III Grievance Before Filing**

Here, Plaintiff brings his claims under 42 U.S.C. § 1983 and various federal laws, including 42 U.S.C. §§ 1981, 1985, 1986, 1988, 1997, and 2000e-3, all of which are subject to the exhaustion requirement under the PLRA. *See* 42 U.S.C. § 1997e(a) (requiring exhaustion for claims "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . .").[2] Defendant Winn asserts that Plaintiff has not filed any Step III grievance appeals. He provides as evidence Plaintiff's "MDOC Prisoner Step III Grievance Report" from May 2009 through December 8, 2014. (DE 11-3.) The report indicates that "[a] search of this database has been performed for the time period [l]isted on the title of this report and no records were found." (Id.)

Plaintiff did not file a response to Defendant Winn's motion. Although the Court is not required to *sua sponte* comb the record to advocate for a non-

---

[2] Plaintiff also outlines in his complaint portions of the Uniform Commercial Code and the Revised Uniform Trade Practices Act, but does not identify any breaches or damages associated with these laws, does not plead any discernible cause of action, and does not point to any provisions of Michigan or federal law to support such claims. It is unclear what, if any, claim Plaintiff attempts to make related to these doctrines and the Court will not attempt to guess at the nature of the claims asserted in counts 10 and 11 of his complaint. *See Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (even in pleadings by *pro se* parties, "courts should not have to guess at the nature of the claims asserted.").

8

responding party, the Undersigned has reviewed the only substantive document Plaintiff has filed in his case thus far: his complaint. A review of his complaint, however, reveals no evidence to contradict Defendant Winn's assertions. While Plaintiff is not required to specifically plead exhaustion in his complaint, he does not make even a cursory statement that he exhausted his administrative remedies pursuant to MDOC grievance procedure or otherwise with regard to *any* of his claims prior to filing this lawsuit.

Plaintiff does indicate that he submitted an "Administrative Complaint" to give Defendants a notice of his claims (DE 1 at 4, 28-31), but that is insufficient to exhaust his administrative remedies under the MDOC grievance procedure. *See Jones*, 549 U.S. at 219 ("it is the prison's requirements . . . that define the boundaries of proper exhaustion."); *MDOC Policy Directive, Prisoner/Parolee Grievances*, July 9, 2007. Notably, the Administrative Complaint was signed on the same day as his first pleading in this case. (DE 1 at 31.) Moreover, neither this barebones allegation, nor the "Administrative Complaint," give any indication as to which step in the three step process the "Administrative Complaint" relates, nor whether it in any way fulfilled the complete exhaustion requirements, or whether any of the three steps were even undertaken. Nor does he attach any exhibits which would enlighten the Court on this point.

It is notable that Plaintiff asserts in his complaint that Defendants' actions in improperly transferring inmates took away "all of the inmates' rights" and their "option to utilize the inmate grievance process *by transferring them*." (DE 1 at 7)(emphasis added.) The MDOC Policy Directive on prisoner grievances, however, does not preclude inmates from filing administrative grievances, even after a transfer. (See, *e.g.*, DE 11-2, ¶ G(4), which indicates that a grievance will not be rejected as untimely "if there is a valid reason for the delay; e.g., transfer."). By virtue of this allegation, Plaintiff seemingly concedes the fact that he *did not* compliantly utilize the inmate grievance process.[3]

While Defendant bears the burden of proving that Plaintiff failed to exhaust his administrative remedies prior to filing the instant lawsuit, in order to defeat the motion, Plaintiff must proffer competent evidence to create a genuine issue of material fact as to whether he exhausted the administrative remedies described above. Here, however, Plaintiff failed to file a response to Defendant's well-supported motion for summary judgment. Plaintiff does not address the exhaustion requirements in his complaint, even in a conclusory manner. Accordingly, there is nothing in the record which would create a genuine dispute of material fact such

---

[3] Furthermore, he implicitly concedes the inadequacy of his "Administrative Complaint" as a mechanism for exhausting his administrative remedies by asking the Court to deem that it does constitute "lawful exhaustion," at least as to Defendant Aramark Corporation, "where no procedure exist [sic] for plaintiff to redress grievances held . . . ." (DE 1 at 16.)

that his claims should survive summary judgment. *See, e.g., Alexander v. Caresource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). Defendant Winn has met the burden of proving his affirmative defense. The Undersigned therefore recommends that the Court **GRANT** Defendant Winn's motion for summary judgment on this basis. (DE 11.)[2]

## 2. Declaratory Judgment and Injunctive Relief

Even if Plaintiff's claims were to survive summary judgment, his claims against Defendant Winn for injunctive and declaratory relief are moot.[3] A prisoner's claims for injunctive and declaratory relief from officials at a specific prison become moot when the prisoner is transferred from the prison about which

---

[4] To the extent Plaintiff purports to bring this as a class action (DE 1 at 18, ¶ 18), his failure to exhaust administrative remedies also acts as a bar to any such action. *See, e.g., Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (applying "vicarious exhaustion" where at least one class member has exhausted his grievances). Here, Plaintiff notes that other prisoners may represent a class in this case. He has not, however, moved to certify a class. Nor has he asserted that any purported class members have exhausted their administrative remedies with respect to his claims. Nor has he met any other pleading or procedural requirements for a class action under Fed. R. Civ. P. 23.

[5] As best as the Undersigned can discern, Plaintiff seeks injunctive relief from Defendant Winn in the form of a transfer back to SRF for re-employment at his previous food service position. (DE 1 at 18, ¶ 16.) Again, Plaintiff seeks reinstatement, not just for himself but for "each injured party," as if he had standing to do so on behalf of non-parties, which he does not. (Id.)

he or she complains, in the absence of exigent circumstances which do not exist in this case. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Howard v. Dougan*, 221 F.3d 1334, at *2 (6th Cir. 2000) (noting that a reasonable showing that a prisoner will be subjected to the same conditions at his or her new institution of incarceration is an exception to the mootness doctrine). Plaintiff brings his claims against Defendant Winn, who serves as the SRF Warden, for events that took place while he was housed at SRF. When Plaintiff filed his complaint, however, he had already been transferred to KCF. (DE 1, ¶ 1.) Accordingly, to the extent that any of his claims against Defendant Winn survive, his claims for injunctive relief have been rendered moot.[4]

Furthermore, although Plaintiff attempts to assert that Defendants transferred him in violation of his right to be employed in prison, Plaintiff has no such right. *See Majied v. Brown*, 803 F.2d 720, 720 (6th Cir. 1986) ("an expectation of keeping a particular prison job does not amount to either a property or liberty interest cognizable under § 1983." (internal quotation omitted)); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) ("A prisoner has no constitutional right to prison employment or a particular prison job."). Accordingly, the loss of a prison

---

[6] The analysis might well be different for Defendant Aramark, which Plaintiff asserts is "the company in charge of Food Services at the Saginaw Correctional Facility and the entire State of Michigan's Department of Corrections." (DE 1, ¶ 4.)

job can hardly constitute "cruel and unusual punishment" in violation of the Eighth Amendment.[5]

### 3. Eleventh Amendment Immunity

Furthermore, even if Plaintiff's claims against Defendant Winn were to survive summary judgment, to the extent Plaintiff sues Defendant Winn in his official capacity and for money damages, those claims are barred by the Eleventh Amendment. Where a plaintiff sues a defendant in his or her official capacity, it "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, Plaintiff brings his claims against all Defendants in their official and personal capacities.[6] (DE 1 at 1.) Plaintiff's claims against Defendant Winn in his official capacity, therefore, are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Put another way, "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Id.* at 169 (internal citation omitted). Thus, even if the Court disagrees with the foregoing

---

[7] Indeed, the Undersigned notes that the loss of jobs due to their being shifted to outside contractors, as is alleged here, is a daily occurrence in the non-prison world. DE 1, ¶4.

[8] Plaintiff does not explain how the individuals could be personally liable. Nor does he indicate how such a pleading could survive an immunity defense.

13

recommendation, the Eleventh Amendment remains a bar to Plaintiff's claim for money damages against Defendant Winn in his official capacity.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: April 30, 2015　　　　　　　　s/Anthony P. Patti　　　　　　　　
　　　　　　　　　　　　　　　　　　Anthony P. Patti
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 30, 2015, electronically and/or by U.S. Mail.

　　　　　　　　　　　　　　　　　　s/Michael Williams　　　　　　　　
　　　　　　　　　　　　　　　　　　Case Manager for the
　　　　　　　　　　　　　　　　　　Honorable Anthony P. Patti
　　　　　　　　　　　　　　　　　　(313) 234-5200